**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*ex rel.* BUD CONYERS<br><br>Plaintiffs,<br><br>v.<br><br>KELLOGG BROWN & ROOT, INC., et al.,<br><br>Defendants. | Civil Action No. 4:12-cv-04095-SLD-JAG |

**MEMORANDUM OF LAW IN SUPPORT OF
FIRST KUWAITI TRADING & CONTRACTING, WLL'S MOTION TO DISMISS**

Peter F. Garvin III
Grant H. Willis
Meghan E. Greenfield
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone:  (202) 879-3939
Fax:  (202) 626-1700

*Counsel for First Kuwaiti Trading &
Contracting, WLL*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 1

    A.    LOGCAP III and the Truck Subcontracts ............................................... 1

    B.    First Kuwaiti's Contacts with the United States ..................................... 2

ARGUMENT .................................................................................................................. 3

    A.    THIS COURT LACKS PERSONAL JURISDICTION OVER FIRST
           KUWAITI. ................................................................................................ 3

           1.    First Kuwaiti's limited contacts with the United States are
                insufficient to create general jurisdiction. ................................... 4

           2.    Specific jurisdiction is absent because First Kuwaiti's activities
                regarding the Truck Subcontracts created no meaningful
                connection with the United States. ............................................... 5

           3.    The Seventh Circuit does not recognize a conspiracy theory of
                jurisdiction. ................................................................................. 9

    B.    THE GOVERNMENT'S CLAIMS AGAINST FIRST KUWAITI ARE
           TIME-BARRED. ...................................................................................... 10

           1.    The claims are time-barred on the face of the Complaint. ......................... 10

           2.    The Wartime Suspension of Limitations Act does not render timely
                 the government's claims. ............................................................... 13

                (a)    The WSLA does not affect the FCA's statute of repose. ............. 13

                (b)    The WSLA does not apply to civil claims. ................................. 15

                (c)    If the WSLA applied to these claims, the statutes of
                      limitations expired no later than 2008. ....................................... 18

    C.    THE CLAIMS AGAINST FIRST KUWAITI SHOULD BE SEVERED
           FROM THE CLAIMS AGAINST LA NOUVELLE. ........................................ 20

CONCLUSION ................................................................................................................ 22

# TABLE OF AUTHORITIES

**Page**

CASES

*ABF Capital Corp. v. McLauchlan*,
    167 F. Supp. 2d 1011 (N.D. Ill. 2001) ...................................................................11

*Bridges v. United States*,
    346 U.S. 209 (1953).........................................................................17, 18, 20

*Burlington N. & Santa Fe. Ry. V. Poole Chem. Co.*,
    419 F.3d 355,363 (5th Cir. 2005) ...........................................................14

*Chirila v. Conforte*,
    47 F. App'x 838 (9th Cir. 2002) ..............................................................9

*Clark v. Robert W. Baird Co.*,
    142 F. Supp. 2d 1065 (N.D. Ill. 2001) ...........................................11, 12

*Creighton Ltd. v. Gov't of Qatar*,
    181 F.3d 118 (D.C. Cir. 1999)................................................................7, 8

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014)...............................................................................4

*Davis v. A & J Elecs.*,
    792 F.2d 74 (7th Cir. 1986) .....................................................................9

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
    514 F.3d 1063 (10th Cir. 2008) ...............................................................9

*Fraser v. Smith*,
    594 F.3d 842 (11th Cir. 2010) .............................................................6, 18

*Gabelli v. SEC*,
    133 S. Ct. 1216 (2013)...........................................................................14

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
    284 F.3d 1114 (9th Cir. 2002) ................................................................7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S. Ct. 2846 (2011)...........................................................................3

*Grynberg v. Ivanhoe Energy, Inc.*,
    666 F. Supp. 2d 1218 (D. Colo. 2009).....................................................5

*GSS Grp., Ltd. v. Nat'l Port Auth.*,
    680 F.3d 805 (D.C. Cir. 2012).................................................................3

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ............................................................................ 4

*Hollander v. Brown*,
    457 F.3d 688 (7th Cir. 2006) .......................................................... 10

*In re Chiquita Brands Int'l, Inc.*,
    690 F. Supp. 2d 1296 (S.D. Fla. 2010) ........................................ 13

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
    307 F. Supp. 2d 145 (D. Me. 2004) ............................................... 9

*J. McIntyre Mach., Ltd. v. Nicastro*,
    131 S. Ct. 2780 (2011) ................................................................. 5, 9

*Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*
    S. Ct. (*petition for cert. filed* Jun. 24, 2013) (No. 12-1497) ................................ 17

*Lieberman v. Cambridge Partners, L.L.C.*,
    432 F.3d 482 (3rd Cir. 2006) .......................................................... 15

*Lisak v. Mercantile Bancorp, Inc.*,
    834 F.2d 668 (7th Cir. 1987) ............................................................ 3

*Malhotra v. Steinberg*,
    No. C09-1618JLR, 2012 WL 5342509 (W.D. Wash. Oct. 29, 2012) .................... 14

*Margolies v. Deason*,
    464 F.3d 547 (5th Cir. 2006) .......................................................... 14

*Matter of McFarland*,
    84 F.3d 943 (7th Cir. 1996) ............................................................ 16

*McDowell v. Morgan Stanley & Co.*,
    645 F. Supp. 2d 690 (N.D. Ill. 2009) ........................................ 20, 22

*McWane, Inc. v. Crow Chicago Indus., Inc.*,
    224 F.3d 582 (7th Cir. 2000) .......................................................... 11

*Oplus Techs., Ltd. v. Sears Holding Corp.*,
    No. 11-cv-9029, 2012 WL 2400478 (N.D. Ill. June 21, 2012) ...................... 21

*Patriotic Veterans, Inc. v. Ind.*,
    736 F.3d 1041 (7th Cir. 2013) ........................................................ 15

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
    338 F.3d 773 (7th Cir. 2003) ..................................................... 4, 5, 6

*RAR, Inc. v. Turner Diesel, Ltd.*,
  107 F.3d 1272 (7th Cir. 1997) ..................................................................5, 6, 7, 8

*Rice v. Sunrise Express, Inc.*,
  209 F.3d 1008 (7th Cir. 2000) ..............................................................................20

*Rodas v. Seidlin*,
  656 F.3d 610 (7th Cir. 2011) ...............................................................................17

*SEC v. A Chi. Convention Ctr., LLC*,
  961 F.Supp. 2d 905 (N.D. Ill. 2013) ....................................................................16

*Tamburo v. Dworkin*,
  601 F.3d 693 (7th Cir. 2010) .................................................................................4

*Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*,
  304 F. Supp. 2d 1018 (N.D. Ill. 2004) ..................................................................5

*United States ex rel. Carter v. Halliburton Co.*,
  710 F.3d 171 (4th Cir. 2013) ...........................................................................17, 19

*United States ex rel. Cericola v. Fed. Nat'l Mortg. Assoc.*,
  529 F. Supp. 2d 1139 (C.D. Cal. 2007) ...............................................................15

*United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*,
  505 F. Supp. 2d 1 (D.D.C. 2007) ....................................................................11, 12

*United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*,
  No. 95-1231, 2007 WL 842082 (D.D.C. Mar. 19, 2007) .....................................13

*United States v. Carell*,
  681 F. Supp. 2d 874 (M.D. Tenn. 2009) ...............................................................15

*United States v. Pfluger*,
  685 F.3d 481 (5th Cir. 2012) ...........................................................................19, 20

*United States v. Prosperi*,
  573 F. Supp. 2d 436 (D. Mass. 2008) ...................................................................19

*United States v. Quad City Prosthetic, Inc.*,
  Case No. 06-4015, 2011 U.S. Dist. LEXIS 84190 (C.D. Ill. Aug. 1, 2011).....................11, 12

*United States v. Smith*,
  342 U.S. 225 (1952)........................................................................................16, 18

*United States v. Tech Refrigeration*,
  143 F. Supp. 2d 1006 (N.D. Ill. 2001) ..................................................................11

*Walden v. Fiore*,
134 S. Ct. 1115 (S. Ct. 2014) ................................................................. passim

*Wallace v. Herron*,
778 F.2d 391 (7th Cir. 1985 ..........................................................................6

*Webb v. United States*,
66 F.3d 691 (4th Cir. 1995) ..........................................................................14

*Wimberly v. Labor & Indus. Relations Comm'n of Mo.*,
479 U.S. 511 (1987) .....................................................................................17

*Worthington v. Wilson*,
8 F.3d 1253 (7th Cir. 1993) .........................................................................13

**STATUTES**

18 U.S.C. § 3287 .................................................................................13, 16, 18

21 U.S.C. § 335b(b)(3)(B) ..............................................................................14

31 U.S.C. § 3731 ............................................................................................15

31 U.S.C. § 3731(a) ..........................................................................................3

31 U.S.C. § 3731(b) ...................................................................................10, 12

31 U.S.C. § 3731(b)(2) ...................................................................................14

41 U.S.C. § 8706(b)(2) ...................................................................................11

Pub. L. No. 111-21, § 4(b) .............................................................................17

Pub. L. No. 111-148 .......................................................................................17

**OTHER AUTHORITIES**

94 Cong. Rec. 8721 (daily ed. June18, 1948) ...............................................18

American Heritage Dictionary 1255 (3d ed. 1992) .......................................16

Black's Law Dictionary (9th ed. 2009) .........................................................16

Fed. R. Civ. P. 12(b)(2) .................................................................................1, 3

S. Rep. No. 110-431 .......................................................................................16

# INTRODUCTION

The United States government asserts claims against First Kuwaiti Trading and Contracting Co., WLL, ("First Kuwaiti")[1] under the False Claims Act ("FCA"), the Anti-Kickback Act, and common law relating to subcontracts First Kuwaiti entered into more than ten years ago with Kellogg, Brown & Root Services Inc. ("KBR") to deliver trucks and trailers for use by KBR in Iraq. For the reasons set forth below, all of these claims should be dismissed.

This Court lacks personal jurisdiction over First Kuwaiti. General jurisdiction is absent because First Kuwaiti has no operations in the United States. Specific jurisdiction is absent because the government's allegations are based solely on First Kuwaiti's activities on subcontracts with KBR that were negotiated, executed, and performed overseas. Accordingly, the claims against First Kuwaiti must be dismissed under Federal Rule of Civil Procedure 12(b)(2).

The claims against First Kuwaiti are also untimely, as evident on the face of the Complaint, and must be dismissed under Rule 12(b)(6). The Wartime Suspension of Limitations Act ("WSLA") is inapplicable to the claims against First Kuwaiti.

Finally, if the Court does not dismiss the claims against First Kuwaiti, the Court should sever the government's claims against First Kuwaiti from the claims against La Nouvelle pursuant to Rule 21.

# FACTUAL BACKGROUND

## A.      LOGCAP III AND THE TRUCK SUBCONTRACTS.

On December 14, 2001, the U.S. Army awarded contract number DAAA09-02-D-0007, known as Logistics Civil Augmentation Program ("LOGCAP") III, to Brown and Root Services,

---

[1] The Complaint identifies numerous First Kuwaiti entities as defendants. These are all alternative names for First Kuwaiti Trading & Contracting, WLL, which is the legal entity that entered into the subcontracts at issue in this case.

a division of Kellogg, Brown & Root, Inc. (Compl. ¶ 9). LOGCAP III called for the provision of support services for U.S. troops in the military theater. (*Id*.)

First Kuwaiti entered into various agreements with affiliates of Kellogg, Brown & Root, Inc. in connection with LOGCAP III, including five truck supply subcontracts identified in the government's Complaint (the "Truck Subcontracts"): Subcontract number GU49-VC-S00093 ("Subcontract 93"), entered into in April 2003, (Compl. ¶ 99); GU49-KU-S00121 ("Subcontract 121"), dated April 21, 2003, (Compl. ¶ 103); GU49-KU-S00167 ("Subcontract 167"), dated June 17, 2003, (Compl. ¶ 107); GU49-KU-S100190 ("Subcontract 190"), dated July 24, 2003, (Compl. ¶ 123); and GU49-KU-S00203 ("Subcontract 203"), dated July 10, 2003, (Compl. ¶ 119).

First Kuwaiti and KBR negotiated the Truck Subcontracts in Kuwait. (Decl. of First Kuwaiti Trading & Contracting, WLL ("FKTC Decl."), Exh. 1 at 3.) KBR employee Anthony Martin was based in Kuwait and represented KBR during these negotiations. (*Id*. at 3.) The U.S. government was not a party to the Truck Subcontracts and had no role in the negotiations leading to their execution. (*Id*. at 3.)

### B.    FIRST KUWAITI'S CONTACTS WITH THE UNITED STATES

First Kuwaiti is a Kuwaiti corporation headquartered in Kuwait City that performs most of its business in the Middle East. (FKTC Decl. at 1-2.) First Kuwaiti has never performed a contract in the United States, has never been licensed to do business in the United States, and had no contacts with the United States related to the Truck Subcontracts. (*Id*. at 2.) The company has no offices, has no phone listing, owns no real property, has never paid income or real estate taxes, and has no agent appointed for service of process in the United States. (*Id*.)

**ARGUMENT**

## A. THIS COURT LACKS PERSONAL JURISDICTION OVER FIRST KUWAITI.

This Court cannot appropriately exercise personal jurisdiction over First Kuwaiti for the claims in this action. The claims must therefore be dismissed. *See* Fed. R. Civ. P. 12(b)(2).

Personal jurisdiction does not obtain unless a defendant has sufficient contacts with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (S. Ct. 2014) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).[2] Personal jurisdiction may be found under a "general jurisdiction" theory or a "specific jurisdiction" theory. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). "General jurisdiction" can exist only where the defendant's contacts with the forum are "so continuous and systematic" that it is "essentially at home" in the forum. *Id.* (citation omitted). Absent general jurisdiction, a court can exercise "specific jurisdiction" over a defendant only if the defendant's conduct related to the matter being litigated creates "a substantial connection with the forum." *Walden*, 134 S. Ct. at 1121.

Courts apply a nationwide contacts test and measure the defendant's contacts with the United States as a whole to assess personal jurisdiction in FCA suits. *See Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671-72 (7th Cir. 1987) (holding that relevant forum is the United States where statute authorized nationwide service of process); 31 U.S.C. § 3731(a) (authorizing service of process "at any place in the United States").

---

[2]"[F]oreign corporations may invoke due process protections to challenge the exercise of personal jurisdiction over them." *See GSS Grp., Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 813 (D.C. Cir. 2012).

The government bears the burden of demonstrating the existence of personal jurisdiction. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) ("The plaintiff has the burden of establishing personal jurisdiction.").

### 1. First Kuwaiti's limited contacts with the United States are insufficient to create general jurisdiction.

First Kuwaiti has insufficient contacts with the United States to create general personal jurisdiction in U.S. courts.

Courts do not have general personal jurisdiction over a foreign defendant unless that defendant's contacts with the United States are "so extensive to be tantamount to [the defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in [a U.S.] court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788 (7th Cir. 2003); *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 758 n. 11 (2014) (general jurisdiction requires contacts "so continuous and systematic as to render the foreign corporation essentially at home in the forum").  The execution of contracts with an entity in the forum coupled with visits to the forum, for example, are insufficient to create general jurisdiction over a defendant.  *See Purdue*, 338 F.3d at 788 (finding no general jurisdiction where defendant's contacts were limited to "several confidentiality agreements with Eli Lilly and a few visits to Indiana in furtherance of these agreements"); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) (finding no general jurisdiction where foreign defendant visited Texas, purchased helicopters from Texas, and drew money from Texas account); *Tamburo*, 601 F.3d at 701 (finding no general jurisdiction where defendants occasionally visited state and did business in state).

First Kuwaiti's limited contacts fall far short of this high standard. First Kuwaiti was established in Kuwait, is headquartered in Kuwait City, and performs most of its work in the Middle East. (FKTC Decl. at 1-2.) First Kuwaiti has never been set up to do business in the United States, has never performed a contract in the United States, has no offices, telephone numbers, real property, or registered agents in the United States, and pays no income or real estate taxes here. (*Id.* at 3.) First Kuwaiti is not "at home" in the United States, and its limited contacts with the United States—including engaging in a few now completed contracts with U.S.-based entities such as KBR and the U.S. State Department—do not create general jurisdiction over it. *See Purdue*, 338 F.3d at 788; FKTC Decl. at 2-3.[3]

**2.    Specific jurisdiction is absent because First Kuwaiti's activities regarding the Truck Subcontracts created no meaningful connection with the United States.**

This Court likewise cannot assert specific personal jurisdiction over First Kuwaiti for the claims in this action.

Specific jurisdiction exists where the defendant has submitted to the sovereign's authority "through contact with and activity directed at a sovereign" and the "suit aris[es] out of or [is] related to the defendant's contacts with the forum." *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2788 (2011). Unlike general personal jurisdiction, the *only* contacts within the forum that a court can consider in the specific jurisdiction analysis are contacts that "bear on the substantive legal dispute between the parties." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272,

---

[3] First Kuwaiti's involvement in litigation in the United States unrelated to the claims asserted here is likewise insufficient to satisfy the "demanding standard" for general personal jurisdiction. *See, e.g.*, *Grynberg v. Ivanhoe Energy, Inc.*, 666 F. Supp. 2d 1218, 1231 (D. Colo. 2009), *aff'd*, 490 F. App'x 86 (10th Cir. 2012) (finding no persuasive authority that "unrelated litigation related to a single separate issue is sufficient to confer general jurisdiction" and collecting cases); *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1025 (N.D. Ill. 2004) (holding no general jurisdiction where defendant litigated an unrelated claim in the forum).

1278 (7th Cir. 1997). The defendant's other, unrelated contacts with the forum territory are wholly irrelevant to the specific jurisdiction analysis. *Id*. at 1279 (holding past forum contacts irrelevant where they "tell the court nothing about RAR's cause of action"); *Purdue*, 338 F.3d at 780 ("[T]he inquiry here must focus on" the defendant's activities "*with respect to this litigation.*").[4] In other words, as recently articulated by the Supreme Court, to exercise specific jurisdiction consistent with due process, "the defendant's suit-related conduct must create a substantial connection with the forum" territory. *Walden*, 134 S. Ct. at 1121.

Moreover, as the Court made clear, this connection "must arise out of contacts that the 'defendant *himself*' creates with the forum" and not from the connections of the plaintiff. *Id*. at 1122. The plaintiff's connections with the forum—including any alleged harm suffered by the plaintiff in the forum—are irrelevant to the specific jurisdiction analysis. *Id*. at 1122, 1125; *see also Fraser v. Smith*, 594 F.3d 842, 849 (11th Cir. 2010) (holding that contacts with forum residents abroad are not contacts with the home forum) (*citing Burger King Corp. v. Rudzewicz*, 444 U.S. 462, 474-75 (1985)); *Wallace v. Herron*, 778 F.2d 391, 394 (7th Cir. 1985) (holding Indiana lacked personal jurisdiction where tort was allegedly committed against Indiana resident in California).

In *Walden*, a federal law enforcement officer at an airport in Atlanta, Georgia seized the gambling winnings of two travelers as they boarded a plane to Las Vegas, Nevada. *Walden*, 134 S. Ct. at 1119. The officer drafted an affidavit to show that he had probable cause for seizure of the cash and forwarded this affidavit to the U.S. Attorney's Office in Georgia. *Id*. The travelers sued the officer in Nevada, asserting that the affidavit was false. *Id*. at 1120. The Ninth Circuit held that specific jurisdiction existed over the officer because he had "expressly aimed" his

---

[4] The Seventh Circuit has made clear that conflating the tests for general and specific jurisdiction is improper. *See RAR, Inc.*, 107 F.3d at 1277.

conduct at Nevada when he submitted the affidavit "with knowledge that it would affect persons with a 'significant connection' to Nevada." *Id*.

The Supreme Court disagreed and reversed, 9-0. It held there was no specific jurisdiction over the officer in Nevada because it was "undisputed that no part of [the officer's] course of conduct occurred in Nevada" and "none of [the officer's] conduct had anything to do with Nevada itself." *Id*. at 1124-25. "The proper question," explained the Court, "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. That the respondents were injured in Nevada as a result of the officer's seizure in Atlanta, the Court found, was "not the sort of effect that is tethered to Nevada in any meaningful way." *Id*.

The U.S. Court of Appeals for the D.C. Circuit arrived at the same conclusion in *Creighton Ltd. v. Gov't of Qatar*, 181 F.3d 118 (D.C. Cir. 1999), holding that no specific jurisdiction existed over a foreign defendant who entered into a contract with a U.S. company to build a hospital in Qatar, because "the contract was offered, accepted, and performed in Qatar." *Id*. at 128. Specific jurisdiction was absent even though the foreign defendant allegedly contacted the U.S. plaintiff in Tennessee during negotiations, signed a contract modification in Tennessee, and "telexed weekly status reports" to the plaintiff's offices in Tennessee. *Id.* at 127. The court determined these contacts were insufficient to confer jurisdiction because they were driven by the plaintiff's actions, not the defendant's—specifically, the plaintiff's "decision to base itself" in Tennessee—and that the contacts were "not instances of [the defendant] purposefully availing itself of the benefits of the laws of Tennessee or of the United States." *Id*. at 128; *see also RAR*, 107 F.3d at 1279 (holding no specific jurisdiction where "[m]ost of the activity, including most of the negotiations, took place in Scotland"); *Glencore Grain Rotterdam*

*B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123-24 (9th Cir. 2002) (holding no specific jurisdiction where "contracts giving rise to th[e] dispute were negotiated abroad, involved foreign companies, and required performance (i.e., delivery of rice) in India").

First Kuwaiti's conduct related to the Truck Subcontracts did not create a "substantial connection" with the territory of the United States such as to justify the exercise of personal jurisdiction related to this dispute. *Walden*, 134 S. Ct. at 1121. Specifically, (1) First Kuwaiti negotiated the Truck Subcontracts in Kuwait with a KBR representative who was based in Kuwait; (2) the Subcontracts were executed in Kuwait and performed by First Kuwaiti entirely in Kuwait; (3) First Kuwaiti's contact at KBR, Mr. Martin, was based in Kuwait; (4) First Kuwaiti received payments from a KBR bank account in Kuwait to a First Kuwaiti account in Kuwait; and (5) no First Kuwaiti representatives traveled to the United States in connection with the negotiation or performance of the Truck Subcontracts. (*See* FKTC Decl. at 4.)[5]

The government's claims do not arise out of any contacts First Kuwaiti *itself* created with the territory of the United States. *Walden*, 134 S. Ct. at 1122 (specific jurisdiction measured by contacts "'defendant *himself*' creates with the forum"). Rather, they arise out of activities between First Kuwaiti and KBR—including the creation and performance of the Truck Subcontracts and allegations regarding conduct between Mr. Martin and First Kuwaiti—all of which occurred overseas. (*See* FKTC Decl. at 2-3.) These facts do not allow the Court to exercise specific jurisdiction over First Kuwaiti in this matter. *See Walden*, 134 S. Ct. at 1125; *Creighton*, 181 F.3d at 128.[6]

---

[5] First Kuwaiti's contacts with the United States related to other agreements, including its contract to construct the U.S. embassy compound in Iraq and subcontracts for work on other U.S. consular projects, "tell the court nothing about [the government's] cause of action" in this case and thus may not be considered as part of the specific jurisdiction analysis. *RAR, Inc.*, 107 F.3d at 1278.

[6] That *Creighton* involved a contractual dispute does not make its analysis of specific jurisdiction distinguishable here. The Supreme Court in *Walden* expressly held that the "same

First Kuwaiti's awareness that the commercial trucks and trailers it provided to KBR might ultimately be used for the benefit of the U.S. government, or that KBR might be paid by the U.S. government for KBR's truck-related services, is irrelevant to the specific jurisdiction analysis. *See J. McIntyre*, 131 S. Ct. at 2788-89 ("[A] rule based on general notions of fairness and foreseeability[] is inconsistent with the premises of lawful judicial power."). It is equally irrelevant that the government may allege to have been harmed in the United States because of First Kuwait's overseas conduct. *See Walden*, 134 S. Ct. at 1125 (holding the location of the plaintiff's injury has no bearing on the specific jurisdiction analysis). Jurisdiction is absent because "none of [First Kuwaiti's] challenged conduct had anything to do with [the United States' territory] itself." *Id.*; *see also Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (asserting that the jurisdictional analysis is "territorial in nature").

### 3. The Seventh Circuit does not recognize a conspiracy theory of jurisdiction.

The government's conspiracy allegation does not support a finding of specific personal jurisdiction over First Kuwaiti. (*See* Compl. ¶ 157.) The Seventh Circuit has rejected "an independent federal 'civil co-conspirator' theory of personal jurisdiction." *Davis v. A & J Elecs.*, 792 F.2d 74, 76 (7th Cir. 1986). Other courts likewise have expressed "a great deal of doubt surrounding the legitimacy of [a] conspiracy theory of personal jurisdiction." *Chirila v. Conforte*, 47 F. App'x 838, 842 (9th Cir. 2002); *see also In re New Motor Vehicles Canadian Export Antitrust Litig.*, 307 F. Supp. 2d 145, 158 (D. Me. 2004) ( "I do not believe that the First Circuit would recognize a conspiracy theory of personal jurisdiction, whereby jurisdiction can be

---

(continued…)

principles that apply" to the analysis of specific jurisdiction in contractual disputes apply "when intentional torts are involved." 134 S. Ct. at 1123.

obtained over nonresident defendants based upon the jurisdictional contacts of co-conspirators.").

## B. THE GOVERNMENT'S CLAIMS AGAINST FIRST KUWAITI ARE TIME-BARRED.

The government's claims against First Kuwait should be dismissed for the additional reason that they are all untimely.

### 1. The claims are time-barred on the face of the Complaint.

The government could have discovered with reasonable diligence the alleged facts underlying its claims against First Kuwaiti well before and certainly no later than 2007, the year the government prosecuted KBR employee Anthony Martin for essentially the same alleged conduct. Accordingly, the government's claims against First Kuwaiti are time-barred and should be dismissed pursuant to Rule 12(b)(6). *See Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) ("[D]ismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense").

A civil FCA action "may not be brought … more than 6 years after the date on which the violation" is committed or "more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances … but in no event more than 10 years after the date on which the violation is committed." 31 U.S.C. § 3731(b). An Anti-Kickback Act action "must be brought within 6 years after" either "the prohibited conduct establishing the cause of action occurred" or "the Federal Government first knew or should reasonably have known that the prohibited conduct had occurred." 41 U.S.C. § 8706(b). Under Illinois law, the statutes of limitations for common law fraud and unjust enrichment are five years. *See ABF*

*Capital Corp. v. McLauchlan*, 167 F. Supp. 2d 1011, 1014 (N.D. Ill. 2001) (presumption that Illinois statutes of limitations apply to claims brought in Illinois courts); *Clark v. Robert W. Baird Co.*, 142 F. Supp. 2d 1065, 1075 (N.D. Ill. 2001) (statute of limitations for fraud); *United States v. Quad City Prosthetic, Inc.*, Case No. 06-4015, 2011 U.S. Dist. LEXIS 84190, at *28 (C.D. Ill. Aug. 1, 2011) (statute of limitations for unjust enrichment).

Courts apply a "discovery-due diligence standard" to determine when the Anti-Kickback Act's six-year statute of limitations and the FCA's three-year statute of limitations begin to run. Under this standard, the limitations period begins when the government "discovers[,] or by reasonable diligence could have discovered, the basis of the lawsuit"; it does *not* wait to run until such time as the "plaintiff is aware that the conduct at issue [may be] actionable under the law." *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 505 F. Supp. 2d 1, 7, 13-14 (D.D.C. 2007); *see also United States v. Tech Refrigeration*, 143 F. Supp. 2d 1006, 1009 (N.D. Ill. 2001) ("the clock starts running when the material facts are known or *reasonably should have been known* to the DOJ") (citation omitted); 41 U.S.C. § 8706(b)(2) (statute of limitations begins to run when "the Federal Government first knew or should reasonably have known that the prohibited conduct had occurred"). Similarly, under Illinois law, the statute of limitations "begins to run when the plaintiff knows or reasonably should know of his injury and knows that it was wrongfully caused." *McWane, Inc. v. Crow Chicago Indus., Inc.*, 224 F.3d 582, 585 (7th Cir. 2000).

Courts have held that the DOJ can, with reasonable diligence, discover the basis for a civil FCA claim where a defendant is under federal criminal investigation for similar conduct. *Miller*, 505 F. Supp. 2d at 17-18 (finding civil DOJ attorney on notice where defendant was under criminal investigation because "a reasonable Civil Division attorney *would* have—and

*should* have—sought information from the criminal investigation being conducted by the Antitrust Division").

The government's claims in this matter are based almost entirely on virtually identical claims the government brought against Mr. Martin in criminal proceedings in the Central District of Illinois in 2007.  The government alleges in its Complaint that "On July 13, 2007, Martin pleaded guilty to violating the Anti-Kickback Act … [and] admitted participating in a kickback scheme with First Kuwaiti in which the company agreed to pay Martin 50 Kuwaiti Dinars (KWD) ($167) per tractor per month under any subcontract Martin awarded to the company." (Complaint ¶ 40.)  The government further alleges that Martin asserted that this kickback scheme involved Subcontracts 167 and 190 and that—because Martin claimed he would be paid "under *any* subcontract Martin awarded to the company"—Subcontract 203 was implicated in the alleged scheme as well. (*Id*. ¶¶ 40-41 (emphasis added).)[7]

The government's knowledge of these alleged facts placed the government on notice, and "started the clock" on the statutes of limitations.  *See Miller*, 505 F. Supp. 2d at 17-18.  By the time the government filed this suit on January 8, 2014—some six-and-a-half years after Martin's guilty plea—the statutes of limitations for the government's Anti-Kickback Act, FCA, and common law claims had all expired.  *See* 41 U.S.C. § 8706(b); 31 U.S.C. § 3731(b); *Clark*, 142 F. Supp. 2d at 1075 (common law statute of limitations); *Quad City*, 2011 U.S. Dist. LEXIS 84190 at * 28 (same).

Finally, the government's assertion that its claims are timely "excluding the time [First Kuwaiti was] outside the United States" is unavailing.  (Compl. ¶ 141(a).)  There is no support for the government's novel position that the FCA statute of limitations runs only when a

---

[7] These allegations are also reflected in the criminal information filed against Mr. Martin and in subsequent plea and trial testimony.  (*See* Information, 07-cr-40042-JBM-JAG (C.D. Ill.), ECF No. 1 at 6.)  The government's claims regarding Subcontracts 93, 121, and 203 are clearly reliant on Mr. Martin's alleged conduct in connection with Subcontracts 167 and 190.

defendant is present in the United States. Certain criminal statutes include provisions that toll

the statute of limitations where a defendant leaves the United States to avoid prosecution. *See,*

*e.g.*, *In re Chiquita Brands Int'l, Inc.*, 690 F. Supp. 2d 1296, 1304 (S.D. Fla. 2010) (discussing

Anti-Terrorism Act's tolling provision). But there is no such provision in the FCA, Anti-

Kickback Act, or under any of the government's common law causes of action. In any event,

First Kuwaiti could not "leave" the United States, because it has never had a presence here. (*See*

FKTC Decl. at 1, 3.)[8]

### 2. The Wartime Suspension of Limitations Act does not render timely the government's claims.

The government alleges that the Wartime Suspension of Limitations Act ("WSLA"), 18

U.S.C. § 3287, suspended the statute of limitations for this action and makes its claims against

First Kuwaiti timely. (Compl. ¶ 141(b).) It does not.

#### (a) The WSLA does not affect the FCA's statute of repose.

The WSLA states that "the running of any statute of limitations applicable to any offense

(1) involving fraud or attempted fraud against the United States … shall be suspended until 5

years after the termination of hostilities as proclaimed by a Presidential proclamation, with notice

to Congress, or by a concurrent resolution of Congress." 18 U.S.C. § 3287 (emphasis added).[9]

---

[8] The government's Complaint against First Kuwaiti cannot "relate back" to the filing date of the Relator's Complaint in this action, because First Kuwaiti was not named in the Relator's complaint. (*See* ECF No. 1.) *See Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993) (holding that "a new defendant cannot normally be substituted or added by amendment after the statute of limitations has run"); *see also United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, No. 95-1231, 2007 WL 842082, at *2 (D.D.C. Mar. 19, 2007) (concluding claims against new defendant did not relate back to initial filing because "there is no evidence that the relator initially intended to include defendant Anderson as an intended defendant").

[9] The WSLA was amended in 2008 to include a five year tolling period. Prior to this amendment, a statute of limitations subject to the WSLA was tolled for only three years. *See* June 25, 1948, ch 645, § 1, 62 Stat. 828. Neither version applies to the government's claims against First Kuwaiti.

The FCA makes clear, however, that "*in no event*" may an action be brought "more than 10 years after the date on which the violation is committed." 31 U.S.C. § 3731(b)(2) (emphasis added). Unlike a "statute of limitation," which is subject to tolling, this provision is a "statute of repose," which completely eliminates the government's right of action ten years after the date of the alleged violation. *See Gabelli v. SEC*, 133 S. Ct. 1216, 1224 (2013) ("[S]tatutes applying a discovery rule in the context of Government suits often couple that rule with an absolute provision for repose."); *see also Margolies v. Deason*, 464 F.3d 547, 551 (5th Cir. 2006) (statutes of repose completely "eliminate the underlying right[ ] when [they] lapse"); *Burlington N. & Santa Fe. Ry. v. Poole Chem. Co.*, 419 F.3d 355, 363 (5th Cir. 2005) ("[W]ith the expiration of the period of repose, the putative cause of action evanesces; life cannot thereafter be breathed back into it."); *Webb v. United States*, 66 F.3d 691, 700-701 (4th Cir. 1995) (a statute of repose "creates a substantive right in those protected to be free from liability after a legislatively-determined period of time").

In *Gabelli*, the Supreme Court examined a provision of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 335b, which provides a six-year limitations period, but also states that "in no event" may an action be brought "more than 10 years after the date the act took place." 21 U.S.C. § 335b(b)(3)(B). The Supreme Court concluded that the FDCA's ten-year rule was "an absolute provision for repose." 133 S. Ct. at 1224. The FDCA's limitations language is nearly identical to the language in the FCA, which likewise provides a discovery rule limitations period, but also incorporates a hard stop ten-year repose provision. *See* 31 U.S.C. § 3731(b)(2). Viewing this limit as an absolute repose provision is consistent with the decisions of other courts that have analyzed the FCA's ten-year bar. *See Malhotra v. Steinberg*, No. C09-1618JLR, 2012 WL 5342509, at *2 (W.D. Wash. Oct. 29, 2012) ("The FCA has a rather

complex statute of limitations.  It is ostensibly a six year limitations period, but there is also a 10 year statute of repose …"); *United States v. Carell*, 681 F. Supp. 2d 874, 880 n.1 (M.D. Tenn. 2009) (the FCA includes "statute of repose insofar as it states that a cause of action under the FCA shall 'in no event' be brought 'more than 10 years after the date on which the violation is committed.'"); *United States ex rel. Cericola v. Fed. Nat'l Mortg. Assoc.*, 529 F. Supp. 2d 1139, 1147 (C.D. Cal. 2007) (noting if fraud is concealed, a FCA claim is "subject to a ten-year statute of repose.").

The WSLA applies only to "the running of any *statute of limitations* applicable to any offense"; the law says nothing about its effect on a clear statute of repose.  31 U.S.C. § 3731 (emphasis added).  Thus, the WSLA should not be read to disrupt the FCA's absolute ten-year bar.  *Patriotic Veterans, Inc. v. Ind.*, 736 F.3d 1041, 1052-53 (7th Cir. 2013) ("A court's inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous' …"); *see Lieberman v. Cambridge Partners, L.L.C.*, 432 F.3d 482, 490 (3rd Cir. 2006) ("Congress undoubtedly possesses the powers to resurrect claims extinguished by a state of repose, no less than claims barred by a statute of limitations, but it must manifest those powers in the clearest possible terms.")

The FCA violations the government alleges against First Kuwaiti all occurred in 2003, when the Truck Subcontracts were awarded.  (*See* Complaint ¶¶ 99, 103, 107, 115, 123.)  The FCA's ten-year statute of repose for these claims expired no later than mid-2013, several months prior to the filing of the government's Complaint.  Accordingly, the FCA claims against First Kuwaiti must be dismissed.

**(b)      The WSLA does not apply to civil claims.**

Moreover, the government cannot rely on the WSLA for purposes of this action because the WSLA, by its terms, does not apply to civil claims.

As stated above, the WSLA provides that "the running of any statute of limitations applicable to any *offense* (1) involving fraud or attempted fraud against the United States … shall be suspended until 5 years after the termination of hostilities as proclaimed by a Presidential proclamation, with notice to Congress, or by a concurrent resolution of Congress."  18 U.S.C. § 3287 (emphasis added).  An "offense," as ordinarily understood, is a crime; it is not simply any cause of action.  *See* Black's Law Dictionary (9th ed. 2009) (noting that the "terms 'crime,' 'offense,' and 'criminal offense' are all said to be synonymous, and ordinarily used interchangeably"); American Heritage Dictionary 1255 (3d ed. 1992) (defining "offense" as "[a] transgression of law; a crime"); *Matter of McFarland*, 84 F.3d 943, 947 (7th Cir. 1996) ("Absent compelling evidence to the contrary, we assume that words in a statute carry the weight of their ordinary, contemporary, and common meaning") (*citing Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 388 (1993)).  That the term "offense" in the WSLA was intended to apply to crimes is confirmed by the WSLA's placement in title 18 of the United States Code, titled "Crimes and Criminal Procedure."  *See SEC v. A Chi. Convention Ctr., LLC*, 961 F.Supp. 2d 905, 913 (N.D. Ill. 2013) ("statutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute") (*citing Fla. Dep't of Rev. v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008)).

Other evidence illustrates the criminal focus of the WSLA.  The Supreme Court determined that the purpose of the WSLA was to allow law enforcement officers the opportunity to prosecute "*crimes* of fraud perpetrated against the United States."  *United States v. Smith*, 342 U.S. 225, 229 (1952) (emphasis added).  When the Senate Judiciary Committee revised the WSLA in 2008, it likewise explained that the World War II-era statute "extended the time *prosecutors* had to bring *charges* relating to *criminal fraud offenses*."  *See* S. Rep. No. 110-431,

at 2 (emphasis added). When Congress amended the FCA's statute of limitations provision in 2009 (a year after the 2008 amendment to the WSLA), it made no reference to the WSLA, even though—according to the government's argument—the WSLA was at the time directly applicable to the FCA and arguably rendered the FCA statute of limitations amendment unnecessary. *See* Pub. L. No. 111-21, Sec. 4(b), May 20, 2009, 123 Stat. 1623. Congress amended the FCA again in 2010, and again was silent regarding the supposed impact of the WSLA. *See* Mar. 23, 2010, Pub. L. No. 111-148, Title X, Subtitle A, § 10104(j)(2), 124 Stat. 901; July 21, 2010, Pub. L. No. 111-203, Title X, Subtitle G, § 1079A(c), 124 Stat. 2079. An extension of the WSLA to civil actions, as the government advocates here, would go beyond the traditional and clear application of the statute, and run afoul of the Supreme Court's long-standing instruction that the provision be narrowly construed. *See Bridges v. United States*, 346 U.S. 209, 215 (1953).

The Fourth Circuit's decision in *United States ex rel. Carter v. Halliburton Co.*, 710 F.3d 171 (4th Cir. 2013), *cert. petition pending*, which concluded that the WSLA does apply to civil actions, was wrongly decided and should not be followed by this Court.[10] In reaching its decision in *Carter*, the Fourth Circuit relied on a 1944 amendment to the WSLA that removed the phrase "now indictable under any existing statutes" from the portion of the statute describing the "offenses" subject to tolling. *Id*. at 177. But without further explanation, there is no reason to believe Congress intended to "transform the scope" of the WSLA through this relatively minor textual amendment. *See Wimberly v. Labor & Indus. Relations Comm'n of Mo.*, 479 U.S. 511, 518-19 (1987); *Rodas v. Seidlin*, 656 F.3d 610, 618 (7th Cir. 2011) (*citing Whitman v. Am.*

---

[10] There is no controlling Seventh Circuit law on this issue. The appellants in *Carter* filed a petition for a writ of certiorari in the Supreme Court, which remains pending. *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter* (No. 12-1497). On October 7, 2013, the Court invited the Solicitor General to file a brief expressing the views of the United States. The Solicitor General has yet to file this brief.

*Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001)) ("Congress … does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.").

The Supreme Court's instruction that the WSLA be narrowly construed was in the context of interpreting the post-1944 version of the statute, *see Bridges*, 346 U.S. at 211-12 (involving conduct that occurred in 1945); *Smith*, 342 U.S. at 226 (involving conduct that occurred in 1947), and neither *Bridges* nor *Smith* supports extending the WSLA to civil matters, *see id*. Four years after the 1944 amendment, Congress comprehensively reorganized the federal criminal statutes so as to include all pertinent laws in title 18. 94 Cong. Rec. 8721 (daily ed. June 18, 1948). This recodification included placing the WSLA under its current citation (18 U.S.C. § 3287), thus confirming that Congress in 1948 did not interpret the deletion of the phrase "now indictable under any existing statutes" as expanding the scope of the WSLA beyond its criminal application.

The Court should find no differently here. The WSLA is inapplicable to the government's civil FCA, Anti-Kickback Act, and common law claims against First Kuwaiti.

**(c)**      **If the WSLA applied to these claims, the statutes of limitations expired no later than 2008.**

Even if the WSLA were applied to the government's claims against First Kuwaiti, the law had no effect after 2008 and therefore cannot remedy the government's untimely Complaint.

The WSLA, as amended, extends the statute of limitations "until 5 years after the termination of hostilities as proclaimed by a Presidential proclamation, with notice to Congress, or by a concurrent resolution of Congress." 18 U.S.C. § 3287. Hostilities have terminated and the statute of limitations begins to run where one party "formal[ly] surrenders" or where there is a "Presidential pronouncement or by the diplomatic or de jure recognition of a former belligerent

or a newly constituted government." *United States v. Prosperi*, 573 F. Supp. 2d 436, 454 (D. Mass. 2008).

Here, the government relies on its military activities in Afghanistan and Iraq as the trigger for the WSLA.  (Complaint ¶ 141(a).)  The *Prosperi* court analyzed whether and when the hostilities in Afghanistan and Iraq had "concluded" for purposes of the WSLA.  573 F.Supp. 2d at 455.  After an exhaustive review of the history of the WSLA, Congressional authorizations for the use of military force, definitions of war under international law, and pragmatic considerations, the court held that the war in Afghanistan ended for purposes of the WSLA "[o]n December 22, 2001, [when] the United States formally recognized and extended full diplomatic relations to the new government of Hamid Karzai."  *Id*.  The court concluded that the war in Iraq formally concluded "on May 1, 2003," when President Bush announced that "major combat operations in Iraq [had] ended" that "the United States and [its] allies [had] prevailed," and that the coalition was "engaged in securing and reconstructing that country."  *Id*.

Using these dates, the WSLA suspension based on the Afghanistan war expired no later than December 22, 2006, and the suspension based on the Iraq conflict expired no later than May 1, 2008.  The claims against First Kuwaiti in this case were not filed until January 8, 2014—well after the WSLA-extended limitations periods for those claims had passed.

The government may argue that the WSLA remains in effect until Congress or the president formally declares the conclusion of the war, as held by the Fifth Circuit in *United States v. Pfluger*, 685 F.3d 481, 485 (5th Cir. 2012); *see also United States ex rel. Carter v. Halliburton Co.*, 710 F.3d 171, 179 (4th Cir. 2013) (adopting *Pfluger*'s definition of termination of hostilities).  But as the *Pfluger* decision itself illustrates, such a holding leads to absurd results, including the conclusion that hostilities in Korea remain ongoing because that conflict was not

terminated "as proclaimed by the President or a concurrent resolution of Congress." *See* 685 F.3d at 485. This would mean that the WSLA continues to suspend the statute of limitations for frauds allegedly committed more than 60 years ago. Such an indefinite tolling cannot be what Congress intended, and is inconsistent with the Supreme Court's direction that the WSLA be narrowly construed. *See Bridges*, 346 U.S. at 215.

The government could have brought these claims against First Kuwaiti at least *seven years* before filing its Complaint in this action. Instead, it elected to wait, and by so doing ran afoul of all applicable timeliness rules. The WSLA offers no cure for this defect. The government's claims against First Kuwaiti must be dismissed.

## C. THE CLAIMS AGAINST FIRST KUWAITI SHOULD BE SEVERED FROM THE CLAIMS AGAINST LA NOUVELLE.

For the reasons set forth above, all of the government's claims against First Kuwaiti should be dismissed. In all events, however, those claims should be severed from the government's claims against La Nouvelle, a separate defendant named in the government's Complaint with no connection to First Kuwaiti and whose alleged conduct is unrelated to the government's allegations against First Kuwaiti.

The Court has "broad discretion" to sever claims under Federal Rule of Civil Procedure 21. *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000). Because joinder creates the risk of confusion and prejudice at trial, severance is warranted where the only relationship between the defendants in an action is that the plaintiff has brought similar claims against them. *McDowell v. Morgan Stanley & Co.*, 645 F. Supp. 2d 690, 697 (N.D. Ill. 2009) ("One or more defendants' similar conduct, without anything more, does not rise to a sufficient level that would justify joining those defendants in a single action pursuant to Rule 20."). Severance is also appropriate where the claims against one defendant are "peripheral" to the claims against the

other, more significant defendant. *See Oplus Techs., Ltd. v. Sears Holding Corp.*, No. 11-cv-9029, 2012 WL 2400478, at *3 (N.D. Ill. June 21, 2012) (severing claims against defendant because "[i]t's unclear what, if anything, the claims against Sears can contribute to Oplus's infringement action against JVC").

Both of these justifications support the severance of the government's claims against First Kuwaiti from those against La Nouvelle in this action. The government has failed to allege any concerted action between First Kuwaiti and La Nouvelle, and the apparently more serious allegations the government has brought against La Nouvelle show that the government's claims against First Kuwaiti are, if anything, peripheral to the claims against La Nouvelle.

The government alleges that La Nouvelle engaged in a scheme beginning in 2002, (Compl. ¶ 45), involving three different KBR employees, (*id*. ¶¶ 35, 38, 43), eight subcontracts and numerous change orders for various services including cleaning services, (*id*. ¶ 45), the construction of a forward area refueling point, (*id*. ¶ 76), and the provision of trucks and buses, (*id*. at 83, 86). The government also alleges that, as part of this scheme, La Nouvelle made payments to certain KBR personnel in excess of $1 million. (*Id*. ¶ 38.)

The government's claims against First Kuwaiti involve a single KBR subcontract administrator (Anthony Martin) and involve only five subcontracts for the provision of trucks. (*Id*. ¶¶ 99, 103, 107, 115, 123.) Indeed, the only "tie" between First Kuwaiti and La Nouvelle is that both were subcontractors for KBR and both allegedly had contact at some point with Mr. Martin. But this similarity alone has nothing to do with the government's respective claims against First Kuwaiti and La Nouvelle and thus is not a proper basis for joinder.

Whatever benefit the government might arguably gain from pursuing claims against La Nouvelle and First Kuwaiti in this single action is far outweighed by the risk that First Kuwaiti

will be prejudiced by being boot-strapped to the government's unrelated case against La Nouvelle.  Accordingly, the claims against First Kuwaiti should be severed pursuant to Rule 21. *See McDowell*, 645 F. Supp. 2d at 697.

## CONCLUSION

For the reasons stated above, all counts in this action against First Kuwaiti should be dismissed with prejudice.  If the Court declines to dismiss the claims against First Kuwaiti, it should sever the claims against First Kuwaiti from the claims against La Nouvelle.

Dated:  May 22, 2014  Respectfully submitted,


/s/ Grant H. Willis
Peter F. Garvin III (*admission pending*)
Grant H. Willis
Meghan E. Greenfield
JONES DAY
51 Louisiana Avenue, NW
Washington, D.C. 20001-2113
Phone:  (202) 879-3939
Fax:  (202) 626-1700

*Counsel for First Kuwaiti Trading &*
*Contracting, WLL*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type volume limitations of CDIL-LR 7.1(B)(4)(b)(1) because it contains 6,981 words, excluding the cover, table of contents, table of authorities, and signature block, and 36,689 characters (no spaces) and 43,864 characters (including spaces).

2.      This brief complies with the typeface limitations of CDIL-LR 5.1(C) and the type style requirements because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 12-point font.


/s/ Grant H. Willis_____
Grant H. Willis