IN THE UNITED STATES DISTRICT COURT FOR
THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA<br>    *ex rel.* CONYERS<br><br>    Plaintiff,<br><br>                v.<br><br>HALLIBURTON, ET AL.,<br><br>    Defendants. | Case No. 12-CV-04095 (SLD/JAG) |

**MEMORANDUM OF LAW IN SUPPORT OF KBR DEFENDANTS'
MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY**

Defendants Kellogg Brown & Root, Inc., and Kellogg Brown & Root Services, Inc. (collectively "KBR") move the Court to compel Plaintiff Bud Conyers to submit his employment-related claims against all defendants to arbitration pursuant to his written agreement. KBR further moves that litigation of Conyers' employment-related claims be stayed pending arbitration or dismissed.

**I. Statement of the Issue**

Conyers is a former employee of Service Employees International, Inc. ("SEII"),[1] who was hired to work as a truck driver in support of KBR's contract with the United States Army (the "LOGCAP Contract"). In this lawsuit, Conyers alleges that he was terminated in retaliation

---

[1] SEII was a corporate affiliate of KBR during the time of Conyers' employment. (Declaration of Janet Hill, ¶ 3). KBR is a third party beneficiary of the arbitration provision in Conyers' employment agreement with SEII and as such, is entitled invoke its provisions. (Declaration of Mary LaMance, Attachment 1, ¶ 26 ("all parent, subsidiary and affiliate or associated corporations" are third party beneficiaries of the arbitration provision and are entitled to invoke its provisions)).

1

for engaging in conduct protected by the False Claims Act ("FCA") in violation of 31 U.S.C. § 3730(h).

When he was hired, Conyers agreed to resolve all employment-related claims under the Halliburton Dispute Resolution Program ("DRP"), which culminates in binding arbitration for claims that are not otherwise resolved by agreement. Conyers' retaliatory discharge claim is within the scope of the DRP and the DRP is enforceable under the Federal Arbitration Act. Accordingly, KBR requests that the Court order Conyers to resolve his claim through arbitration.

## II. Statement of Material Facts

A.  <u>Conyers' Employment with SEII</u>.

Bud Conyers was hired by SEII in May 2003. (Plaintiff's First Amended Complaint ("Compl.") ¶ 14; Declaration of Mary LaMance, Attachment 1). He worked for SEII until approximately December 28, 2003, when he was terminated. (Compl. ¶ 47). At the time he was hired, Conyers executed an employment agreement which enumerated the terms and conditions of his employment with SEII. (Declaration of Mary LaMance, Attachment 1). This agreement included a clause obligating Conyers to resolve all employment disputes in accordance with the DRP. Paragraph 26 of the SEII employment agreement reads in part:

> …You also agree that you will be bound by and accept as a condition of your employment the terms of the Halliburton Dispute Resolution Program which are herein incorporated by reference. You understand that the Dispute Resolution Program requires, as its last step, that any and all claims that you might have against Employer related to your employment, including your termination, and any and all personal injury claim arising in the workplace, you have against other parent or affiliate of Employer, must be submitted to binding arbitration instead of to the court system.
>
> It is expressly understood that, in the case of any controversy described above, all parent, subsidiary and affiliate or associated corporations of Employer, and of their officers, directors, employees, insurers and agents are third party beneficiaries to this provision and are entitled to invoke, enforce and participate in arbitration pursuant to this provision.

(*Id.*, Attachment 1, ¶ 26).

Conyers also executed a "New Hire/Rehire" form which contains a similar arbitration clause. In relevant part, this form states:

> I also agree that I will be bound by and accept as a condition of employment the terms of the Halliburton Dispute Resolution Program which are herein incorporated by reference. I UNDERSTAND THAT THE DISPUTE RESOLUTION PROGRAM REQUIRES, AS ITS LAST STEP, THAT ANY AND ALL CLAIMS THAT I MIGHT HAVE AGAINST THE COMPANY RELATED TO MY EMPLOYMENT, INCLUDING MY TERMINATION, AND ANY AND ALL PERSONAL INJURY CLAIMS, ARISING IN THE WORKPLACE, I HAVE AGAINST ANY OTHER PARENT OR AFFILIATE OF THE COMPANY, BE SUBMITTED TO BINDING ARBITRATION INSTEAD OF TO THE COURT SYSTEM. I also agree that any employment contract or any other agreement which is inconsistent with the provisions of this notice or Dispute Resolution Program is absolutely void unless entered into in writing by the Chief Executive Officer.

(Declaration of Mary LaMance, Attachment 2).

B.  <u>The Halliburton Dispute Resolution Program</u>.[2]

The Halliburton Dispute Resolution Program ("DRP"), under which Conyers agreed to resolve employment claims, provides an effective and fair means of finally resolving all employment disputes. The dispute resolution process established by the DRP culminates in binding arbitration before an independent and neutral arbitrator. (Declaration of Janet Hill, Attachments 1, 2).

The DRP facilitates resolution of disputes without the expense and delay of litigation, provides for discovery in accordance with the Federal Rules of Civil Procedure, and authorizes an award of attorneys' fees to employees who prevail in the arbitration. (*Id.*, Attachment 1 at 11, 16-17). The employer pays all administrative expenses of the arbitration process except for a

---

[2] KBR was a wholly-owned subsidiary of Halliburton at the time of Conyers' employment in 2003. (Declaration of Janet Hill, ¶ 3). Although KBR is no longer owned by Halliburton, and has its own dispute resolution program, it and its affiliates (such as SEII) conduct arbitrations under the rules to which the employee agreed during employment. (*Id.*).

3

$50 filing fee. (*Id.*, Attachment 1 at 17). Under its Legal Consultation Plan, the DRP also will pay up to $2,500 per year to help employees cover the cost of consulting with an attorney of their choice about their legal rights. (*Id.*, Attachment 2 at 15).

The DRP does not restrict or modify an employee's substantive rights under any law or statute and places no limitation on available remedies. (*Id.*, Attachment 1 at 1, 15-16). Rule 30 of the DRP Rules makes this clear:

> The arbitrator's authority shall be limited to the resolution of legal Disputes between the Parties. As such, the arbitrator shall be bound by and shall apply applicable law including that related to the allocation of the burden of proof as well as substantive law. The arbitrator shall not have the authority either to abridge or enlarge the substantive rights available under applicable law.

(*Id.*, Attachment 1 at 15-16). The DRP brochure similarly explains that, "in arbitration, it's possible for you to seek or receive any award you might seek through the court system." (*Id.*, Attachment 2 at 18). Thus, Conyers is entitled to the same relief in arbitration as he would be in a judicial proceeding.

### III. Legal Points and Authorities

A. <u>Conyers' arbitration agreement is enforceable under the Federal Arbitration Act</u>.

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, requires the enforcement of an arbitration agreement that is (1) part of a contract or transaction involving commerce and (2) valid under general principles of contract law. 9 U.S.C. § 2; *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 116 S. Ct. 1652, 1657 (1996). The arbitration agreement between Conyers and SEII satisfies both requirements and is, therefore, enforceable under the FAA.

1. <u>Conyers' employment relationship with KBR involved commerce</u>.

The United States Supreme Court has held that the FAA's reference to commerce reflects Congress' intent to extend the FAA's coverage to the limits of federal power under the Commerce Clause. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268 (1995). In so

holding, the Court recognized that the determination of whether a transaction or contract "involves" commerce requires an expansive construction of the term in order to effectuate Congress' goal of encouraging alternative dispute resolution mechanisms. *Id.* Thus, a matter "involves" commerce under the FAA if it merely "affects" commerce, a standard commonly applied by the Court to situations in which it is clear that Congress intended to exercise its Commerce Clause powers to the fullest extent. *Id.*

Section 1 of the FAA defines "commerce" as "commerce among the several States or with foreign nations . . . ." 9 U.S.C. § 1. SEII hired Conyers to work in Kuwait and Iraq in connection with KBR's contract with the United States Army. (Compl. ¶ 14; Declaration of Mary LaMance, Attachment 1, Data Sheet (noting location of assignment anticipated to be Kuwait)). Consequently, Conyers' employment relationship with KBR involved commerce under the FAA.

2. <u>The arbitration agreement between Conyers and KBR is valid under general principles of contract law</u>**.**

The validity of an arbitration agreement is determined by reference to general principles of contract law. *Doctor's Assocs. Inc.*, 517 U.S. at 686-87; *see also Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (noting that "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally"). However, to the extent that state law carves out special rules for arbitration agreements that do not apply generally to all contracts, it is "inconsonant with, and is therefore preempted by, the federal [act]." *Doctor's Assocs.*, 517 U.S. at 688.

Conyers signed at least two documents that evidence his agreement to resolve employment disputes under the DRP. And, although there is no requirement under the FAA that

5

an arbitration clause be noted conspicuously within a contract, in this particular case, both documents highlighted the arbitration provisions in either bold print or capital letters.

Even were Conyers to claim that he was unaware of his agreement to arbitrate, such an assertion is unavailing. Under Texas law,[3] absent fraud or duress, a party who signs a document is conclusively presumed to have read and understood its contents. *E.g.*, *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) (noting additionally that there is nothing per se unconscionable about arbitration agreements and that Texas courts favor dispute resolution through arbitration); *GWL, Inc. v. Robichaux*, 643 S.W.2d 392, 393 (Tex. 1982).

Moreover, the DRP to which Conyers agreed is fair and reasonable. The DRP does nothing more than shift the forum for resolution from the courts to arbitration. The program does not restrict or eliminate the parties' substantive claims, defenses, or remedies. It permits discovery in accordance with the Federal Rules of Civil Procedure. The program provides for the appointment of a neutral arbitrator who must issue a written award and state the reasons therefore if requested by either party. Finally, the company bears all of the costs of the arbitration process other than an initial $50.00 filing fee. (*See generally*, Declaration of Janet Hill, Attachments 1 & 2).

Courts throughout the United States have consistently enforced the KBR and Halliburton DRP and ordered arbitration of employment claims that fall within its scope. *E.g.*, *United States ex. rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370 (4th Cir. 2008); *Dodds v. Halliburton Energy Servs.*, 273 F.3d 1094, 2001 WL 1085098 (5th Cir. 2001); *Barker v.*

---

[3] Conyers' agreement to arbitrate was formed in Texas and is governed by Texas law. (Declaration of Mary LaMance, Attachment 1, ¶ 25).

*Halliburton Co.*, 541 F. Supp. 2d 879 (S.D. Tex. 2008); *In re Halliburton*, 80 S.W.3d 566 (Tex. 2002).[4]

    3.    <u>Conyers' retaliatory discharge claim under the FCA is arbitrable</u>.

The FAA embodies the liberal federal policy that favors resolution of disputes by arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983). This policy extends to federal statutory claims, including claims arising under the federal civil rights and employment statutes, unless "Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 11 S. Ct. 1647, 1652 (1991) (citation omitted). As the Court in *Gilmer* noted, "it is by now clear that statutory claims may be the subject of an arbitration agreement . . . ." *Id. See also Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 121 S. Ct. 513 (2000) (holding that "even claims arising under a statute designed to further important social policies may be arbitrated because, so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, the statute serves its functions").

The Fourth Circuit, in the only appellate decision that addresses the arbitrability of FCA retaliation claims,[5] concluded that such claims are arbitrable. In *United States ex. rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370 (4th Cir. 2008), the court held that nothing in the anti-

---

[4] In *Jones v. Halliburton Co.*, 583 F.3d 228, 107 (5th Cir. 2009), the Fifth Circuit refused to require the plaintiff to arbitrate certain tort claims but not because the program was unenforceable. Instead, the court held that the plaintiff's sexual assault claim was outside the scope of her agreement to arbitrate, which it found was limited to work-related claims.

[5] The Fourth Circuit has also compelled the United States to arbitrate an FCA claim where it has contractually agreed to do so. *United States v. Bankers Ins. Co.*, 245 F.3d 315, 324-25 (4th Cir. 2001). If the victim who the statute is foremost designed to protect – *i.e.*, the government – can be required to arbitrate, then so too can a victim of alleged retaliation.

retaliation provision of the FCA prohibits employees from waiving their right to pursue such claims in court. *Id.* at 381.

Several district courts have similarly held that FCA retaliation claims against KBR must be arbitrated under the DRP. *United States ex rel. Cassaday v. KBR, Inc.*, 590 F. Supp. 2d 850 (S.D. Tex. 2008); *United States ex. rel. Godfrey v. Kellogg Brown & Root, Inc.*, No. 1:05cv1418 (E.D. Va. Nov. 13, 2007); *United States ex rel. McBride v. Halliburton Co.*, 2007 WL 1954441 at *4-5 (D.D.C. July 5, 2007). Other courts have also held that FCA retaliation claims are subject to arbitration. *E.g. James v. Conceptus, Inc.*, 851 F. Supp. 2d 1020 (S.D. Tex. 2012); *Orcutt v. Kettering Radiologists, Inc.*, 199 F. Supp. 2d 746 (S.D. Ohio 2002); *Mikes v. Strauss*, 889 F. Supp. 746 (S.D.N.Y. 1995).[6]

B.   <u>Conyers' employment claim is subject to his arbitration agreement; therefore it should be severed and Conyers should be ordered to pursue that claim in arbitration</u>.

Conyers claims that he was retaliated against for engaging in conduct protected by the FCA. Specifically, he contends that he was terminated in retaliation for filing complaints with KBR's Internal Affairs Office relating to alleged inappropriate conduct by KBR. (Compl. ¶¶ 43-53). This claim relates to his employment, and falls within the scope of Conyers' arbitration agreement.

---

[6]   The only decision to the contrary, *Nguyen v. City of Cleveland*, 121 F. Supp. 2d 643 (N.D. Ohio 2000), rests on flawed reasoning that no other court has found convincing. *See Wilson*, 525 F.3d at 381 (noting, "other courts to consider that issue have not found *Nguyen* persuasive"). In *Nguyen*, the court acknowledged that nothing in the statute's text or legislative history precluded arbitration but nonetheless refused to enforce the arbitration agreement because of a perceived imbalance in bargaining power between the parties. *Nguyen*, 121 F. Supp. 2d at 647. However, whether the agreement is enforceable under state contract law is an issue distinct from whether Congress intended to preclude arbitration in any instance. The court confused the two issues and, as result, incorrectly held that FCA retaliation claims are not arbitrable.

Conyers agreed to arbitrate "any and all claims that [he] might have against Employer related to [his] employment, including [his] termination . . . ." (Declaration of Mary LaMance, Attachment 1, ¶ 26). Likewise, the DRP broadly encompasses all claims or disputes arising during, or after the termination of, the employment relationship with KBR. (Declaration of Janet Hill, Attachment 1 at 2). The scope extends to "all legal and equitable claims . . . whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Plan . . . ." (*Id.*) Thus, Conyers' retaliation claim is encompassed within the terms of the parties' arbitration agreement.

Moreover, if there was any uncertainty as to whether the parties agreed to arbitrate these claims, the United States Supreme Court has made clear that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including under circumstances where the issue is the construction of the contract language. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24-25 (1983). Given the breadth of the contractual language, and the presumption favoring arbitration, all claims raised by Conyers that relate to his employment in any manner are subject to his arbitration agreement.

Section 3 of the FAA requires that Conyers be ordered to arbitration and that his arbitrable claim be stayed (or dismissed). Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3. This provision leaves the trial court no discretion on this point; rather, the FAA mandates that courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement exists. 9 U.S.C. §§ 3, 4.

9

C.  Arbitration should not be stayed pending resolution of the related FCA lawsuit.

To the extent that Conyers seeks a stay of the arbitration proceeding until the separate claims of the United States are resolved, such as stay in inappropriate and not authorized under law. Under the FAA, arbitration agreements are to be enforced even if the enforcement of such agreements leads to piecemeal litigation or is otherwise inefficient. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20, 103 S. Ct. 927, 939 (1983)

Indeed, when a lawsuit and an arbitration involve the same subject matter or are factually intertwined, courts have generally held that the arbitration should proceed first, rather than the lawsuit. *E.g.*, *Waste Management, Inc. v. Residuos Industriales Multiquim*, 372 F.3d 339 (5th Cir. 2004). *See also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 n.4 (2009) (a litigant who is not a party to the relevant arbitration agreement may invoke Section 3 [of the FAA] if the relevant state contract law allows him to enforce the agreement).

KBR is not suggesting that the claims of the United States should be stayed pending arbitration of Conyers' claims. It would, however, be inconsistent with the FAA to stay the arbitration of Conyers' employment claim pending resolution of the separate claims of the United States in this case.

## IV. Conclusion

For the foregoing reasons, KBR respectfully requests that the Court compel Plaintiff Bud Conyers to submit his employment-related claim against KBR to arbitration pursuant to his agreement to arbitrate such claims. KBR further requests that further litigation of Conyers' claims be stayed or dismissed pending such arbitration.

Respectfully submitted,

s/ David E. Hawkins
Craig D. Margolis
David E. Hawkins
VINSON & ELKINS L.L.P.
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, D.C. 20037-1701
(202) 639-6500
(202) 639-6604 (facsimile)
cmargolis@velaw.com
dhawkins@velaw.com

*Attorneys for Defendants Kellogg Brown & Root, Inc., and Kellogg Brown & Root Services, Inc.,*

OF COUNSEL:

Laura Lucas Palekar
Christine N. Roushdy
VINSON & ELKINS L.L.P.
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, D.C. 20037-1701
(202) 639-6500
(202) 639-6604 (facsimile)

May 27, 2014

**CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that a copy of the foregoing has been served upon the following attorneys of record in this case on this the 27th day of May 2014 via the Court's electronic filing system:

| | |
|---|---|
| John A. Kolar<br>U.S. Department of Justice<br>Post Office Box 261<br>Ben Franklin Station<br>Washington, D.C. 20044<br>john.kolar@usdoj.gov | Meghan E. Greenfield<br>Grant H. Willis<br>Jones Day<br>51 Louisiana Ave., NW<br>Washington, D.C. 20001<br>mgreenfield@jonesday.com<br>ghwillis@jonesday.com |
| | Victor Aronoff Kubli<br>The Law Office of Victor A. Kubli PC<br>13948 Bromfield Road<br>Germantown, MD 20874<br>kubli@kublilaw.com |

                                                s/ David E. Hawkins
                                                David E. Hawkins